14 F.3d 597
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Joey GERARD, Defendant-Appellant.
United States of America, Plaintiff-Appellee,
v.
Tim Foley, Defendant-Appellant.
 Nos. 93-5346, 93-5367.
 United States Court of Appeals, Fourth Circuit.
 Argued October 29, 1993.
Decided December 17, 1993.
 
 1
 Appeals from the United States District Court for the Northern District of West Virginia, at Clarksburg.
 
 
 2
 David A. Sims, Wallace, Harris & Sims, for appellant Gerard.
 
 
 3
 Vito Mussomeli, Summerhill Law, for appellant Foley.
 
 
 4
 Paul Thomas Camilletti, Assistant United States Attorney, for appellee.
 
 
 5
 Franklin D. Cleckley, for appellant Foley.
 
 
 6
 William D. Wilmoth, United States Attorney, for appellee.
 
 
 7
 N.D.W.Va.
 
 
 8
 AFFIRMED.
 
 
 9
 Before NIEMEYER, Circuit Judge, CHAPMAN, Senior Circuit Judge, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 
 PER CURIAM
 OPINION
 I.
 
 10
 Following guilty pleas, Tim Foley and Joey Gerard were sentenced for conspiracy to possess with intent to distribute, and to distribute, cocaine, in violation of 21 U.S.C. Secs. 841(a), 846. Foley contends the district court erred in determining his sentence and Gerard argues that he received ineffective assistance of counsel. We affirm.
 
 II.
 
 11
 Laid off as a correctional officer, Foley used his severance pay to finance purchases of cocaine. Timothy Johns made approximately eighty purchases for Foley between June 1990 and September 1991 and purchased between two and eight ounces on each occasion. Foley contributed most of the money and decided when to divide the cocaine into smaller quantities for resale.
 
 
 12
 When Johns was arrested in September 1991, he was in possession of eight ounces of cocaine, three of which belonged to Foley. Johns estimated that in total, "around $ 462,000 was spent on cocaine during the life of this conspiracy" and just under half of this amount was attributable to Foley.
 
 
 13
 Harold Robert Price sometimes traveled with Johns and Foley to purchase cocaine. Price witnessed Foley giving Johns money for the purchases and supervising the division of the cocaine. Foley invited Timothy Wayne Poling to travel with them to purchase cocaine and Poling witnessed Foley weighing the cocaine for resale purposes and selling cocaine on weekends. Poling made twenty-two trips, purchasing eight ounces a trip, with Foley contributing half the money. Foley also asked Michael Sean Vance to rent a car for the purpose of travelling to purchase cocaine and Vance continued to travel with Foley after Johns and Poling were arrested in September 1991.
 
 
 14
 In his plea agreement, Foley stipulated to the distribution of 8 to 176 ounces of cocaine and Gerard stipulated that he distributed .75 ounce of cocaine. Foley's plea agreement also stipulated that the court would not use information obtained from him as a result of his cooperation in determining his sentence.
 
 
 15
 After the district court reviewed and evaluated the testimony of Poling, Johns and Vance, it concluded that Foley had purchased at least 176 ounces of cocaine. The court then stated:
 
 
 16
 [t]he Court believes that this total amount is quite conservative given Mr. Johns' testimony and the admissions of Mr. Foley to the probation officer that cocaine was bought in Maryland on a frequent, if not weekly, basis, from at least August of 1990 and continued through February of 1992.
 
 
 17
 The court gave Foley a three-step increase in his sentence for being a manager/organizer of the conspiracy and a three-step reduction for acceptance of responsibility, resulting in the imposition of a sentence of ninety-seven months.
 
 
 18
 Shortly before sentencing, Gerard's appointed counsel suffered an illness. As a result, counsel's son, also a lawyer, appeared with Gerard at sentencing. The presentence report noted that the sentencing range was ten to sixteen months, a fine was mandatory, subject to Gerard's ability to pay and, if he was not incarcerated, he would have the ability to pay $ 335.00 a month toward a fine. After hearing oral argument from the parties, the court gave Gerard a two-step reduction for acceptance of responsibility and sentenced him to thirteen months imprisonment, a term of three years of supervised release, and a $ 2,000 fine, to be paid in monthly installments.
 
 III.
 
 19
 Foley challenges the district court's determination that he was responsible for the distribution of 176 ounces of cocaine, U.S.S.G. Sec. 1B1.3. The district court based its finding on the testimony of Poling, Johns and Vance, which the court found to be credible. Poling testified that he purchased a total of 176 ounces of cocaine on purchases primarily financed by Foley. This testimony was corroborated by Johns who testified that Foley spent approximately $ 231,000 on cocaine during the course of the conspiracy, which represented 192 ounces of cocaine at a street price of $ 1,200 per ounce. Finally, Foley stipulated in his plea agreement to the relevant conduct of trafficking up to 176 ounces of cocaine. Thus, the district court's determination is supported by the evidence. See United States v. Adams, 988 F.2d 493, 496 (4th Cir.1993).
 
 
 20
 Foley also contends that the district court improperly relied on post plea statements when imposing sentence, U.S.S.G.Sec. 1B1.8. The district court based its decision entirely upon the testimony by witnesses other than post plea statements. The court merely noted that the post plea statements indicated that the calculation of the amount of cocaine Foley purchased was conservative and did not violate the plea agreement. See U.S.S.G. Sec. 1B1.8; Cf. United States v. Fant, 974 F.2d 559, 563-4 (4th Cir.1992) (prosecution sought an enhancement of defendant's sentence solely upon his post plea incriminating statement).
 
 
 21
 Finally, Foley argues that there was insufficient evidence in the record to enhance his sentence for being a manager/organizer of the conspiracy. The witnesses testified that Foley financially backed many of the cocaine buys, participated and supervised the division of drugs and money, and arranged for travel to purchase drugs for distribution. From this evidence, the district court concluded that Foley was a manager of the conspiracy. This determination is not clearly erroneous. See United States v. Chambers, 985 F.2d 1263, 1268-9 (4th Cir.1993) (if the defendant's role includes making decisions and where his role is greater than that of lesser participants, the enhancement may be applied); United States v. Paz, 927 F.2d 176, 180 (4th Cir.1991).
 
 IV.
 
 22
 Gerard claims that he received ineffective assistance of counsel at the sentencing hearing in violation of the Sixth Amendment. At the hearing, his counsel asked the court to sentence at the lower end of the applicable range because Gerard's family situation was "extraordinary" and he had received an offer of employment. The court sentenced Gerard in the middle range, in accordance with the plea agreement. After reviewing the presentence report's summary of Gerard's financial status, the court imposed a fine which could be paid in small increments. There is no evidence that Gerard received ineffective assistance of counsel.
 
 AFFIRMED