25 F.3d 1042
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Herman Louis STEWART, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lloyd Wilberforce WILLIAMS, Defendant-Appellant.
 Nos. 93-5057, 93-5256.
 United States Court of Appeals, Fourth Circuit.
 Argued December 10, 1993.
Decided June 1, 1994.
 
 Appeals from the United States District Court for the Middle District of North Carolina, at Winston-Salem. Frank W. Bullock, Jr., Chief District Judge. (CR-92-239-WS).
 Argued: David Ferris Tamer, Winston-Salem, NC, for appellant Williams.
 George Alan DuBois, Jr., Asst. Fed. Public Defender, Federal Public Defender's Office, Raleigh, NC, for appellee Stewart.
 Michael Francis Joseph, Asst. U.S. Atty., Greensboro, NC, for appellee.
 On Brief: Benjamin H. White, Jr., U.S. Atty., Greensboro, NC, for appellee.
 M.D.N.C.
 AFFIRMED.
 Before WIDENER, MURNAGHAN and NIEMEYER, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 This is an appeal by Herman Louis Stewart and Lloyd Wilberforce Williams of convictions for drug trafficking crimes. Stewart was convicted of conspiracy to distribute cocaine base, in violation of 21 U.S.C. Sec. 846 and Sec. 841 (Count One). The jury acquitted him of a substantive charge of possession of cocaine with the intent to distribute (Count Five). Stewart appeals his conspiracy conviction, contending that there was insufficient evidence to convict him and that the district court committed reversible error by failing to answer more explicitly jury questions regarding certain aspects of conspiracy law. Stewart also appeals his sentence on the basis that the district court erred in its determination of the amount of cocaine attributed to him and in denying him an offense level decrease based on his minor or minimal role in the offense, pursuant to U.S.S.G. Sec. 3B1.2(a) or (b). Williams appeals only the amount of cocaine base used to calculate his Guidelines sentence pertaining to his conviction of conspiracy pursuant to Count One and three substantive counts of distribution or possession of cocaine with the intent to distribute, pursuant to 21 U.S.C. Sec. 841(a)(1) and Sec. 841(b)(1)(A) (Counts Three, Four, and Five). We affirm the convictions and sentences.
 
 
 2
 Defendant Williams began selling drugs in the Mt. Airy, North Carolina area in February of 1992, when his friend Fitz Bell introduced him to Charles Harris, who proceeded to purchase from Williams approximately one and a half ounces of cocaine base a week until July of 1992. On July 16, 1992, Detective Terry Siler, of the Davidson County Sheriff's Department, drove with Fitz Bell to the residence of Stewart, a small house in Mt. Airy, North Carolina, in order to purchase 1.5 grams[1] of crack cocaine for $200. With Detective Siler remaining in his vehicle in front of the Stewart house, Bell went in and returned with the cocaine. On July 23, 1992, Detective Siler returned to the Stewart residence, accompanied by a confidential informant known as Tow Boy. While they were parked in the driveway, Williams, who lived at Stewart's house, came out and got into the vehicle. They drove away and pulled off the side of the road, and Williams sold Detective Siler 25.7 grams of cocaine base for $2,500. The detective dropped Williams back at the Stewart residence. Accompanied by Tow Boy, Detective Siler made another purchase on August 10, 1992, but this time he entered Stewart's back garage building, which had been remodeled to contain a bathroom, a bar, and tables. The garage was used for drinking and card playing. Williams and Detective Siler conducted the drug transaction in the bathroom in the garage. Williams retrieved 23.7 grams of cocaine base from a Mason jar in the bathroom and sold it to Detective Siler for $2,000.[2] Detective Siler and Tow Boy returned to the Stewart residence on August 13, 1992, and went into the garage to find Williams. Williams and Detective Siler went to the garden between the house and the garage, where Williams retrieved a Mason jar, and proceeded into the house to Williams's bedroom where they viewed the drugs, which were in the jar. The price for 73.6 grams of cocaine base for $6,500 was agreed upon. The sale was completed at Detective Siler's car.
 
 
 3
 During this transaction, the two discussed a potential sale of from one-half to one kilogram of cocaine.
 
 
 4
 On September 10, 1992, Detective Siler and Williams again discussed setting up the sale of a kilogram. Williams advised Detective Siler that his supplier, later identified as Arundel Worrell, would be bringing 20 to 25 ounces of cocaine up from Florida on September 15, 1992, and that he could buy a half-kilogram of that. Detective Siler returned to Stewart's house on September 15, 1992 and they discussed the upcoming deal. Williams told Detective Siler that his supplier was stuck because of the hurricane in Miami, but that he was trying to make it up by 8:00 p.m. on September 17, 1992, and he advised Detective Siler to return then. Detective Siler returned on September 17, 1992 and talked with Williams in the garage. Williams left for a short time to call his supplier in Miami. When he returned to the garage, he was accompanied by Stewart, who stood approximately two feet away from Williams and Detective Siler while they talked. Williams told Detective Siler that his supplier would definitely arrive on September 19th. Detective Siler asked Williams if he could call him to verify the supplier's arrival and avoid another unnecessary trip. Williams turned to Stewart and asked for permission to give out the telephone number, whereupon Stewart said "Yes." Williams told Detective Siler that if he called and Stewart picked up the phone he would say he was Lloyd (Williams), and if Williams picked up the phone he would say he was Stewart, and by that code Detective Siler would know that the drugs had arrived. Captain Halasz, who was monitoring the conversation by way of Detective Siler's body wire, heard this conversation as he drove by in the surveillance unit and also observed the three of them talking together through the open garage door.[3] Stewart was approximately two feet away when Williams made this statement. Detective Siler called the Stewart residence on September 18, 1992 and asked for Lloyd. Williams came to the phone and, without using the previously designated code, told Detective Siler that the cocaine would be there the next day by 12:00 o'clock and that he should come by around 8:00 o'clock.
 
 
 5
 At 8:00 p.m. on September 19, 1992, Detective Siler went to the residence and met with Williams outside of the house. Williams told him he had $35,000 worth of cocaine and Detective Siler told Williams he wanted all of it. Williams told him to wait, and went into the garage and discussed the sale with Worrell, his supplier. Williams then took Detective Siler into a utility room in the garage and retrieved from a shelf a red thermos containing cocaine. Detective Siler told Williams that his money was in his car and he saw Williams pocket some of the cocaine from the thermos as they proceeded to the car. When they got there, Detective Siler gave a signal for his backup officers to come in and arrest Williams. The police recovered 319.3 grams of cocaine base from Williams and the thermos. At this time, Stewart was in the house, asleep. Stewart and his wife gave the officers consent to search their house, and in Williams's room they found $10,111.25 in cash, seven Western Union money transfer receipts totaling $21,500, and 22.9 grams of cocaine base. The officers found and arrested Worrell and Stewart, who was in the house asleep.
 
 
 6
 The government presented evidence at trial as to eight Western Union money transfers sent to Worrell or Judith Nicols, both in Florida, by Stewart or Williams or both. The evidence showed that both Stewart and Williams, with Stewart doing all the talking, sent the following amounts: with Stewart as sender, $2,500 on June 16, 1992, and $2,500 on August 21, 1992; and with Williams as sender, $2,500 on June 16, 1992, and $2,500 on August 14, 1992. In addition, Williams alone sent $3,000 in his own name on August 28, 1992, and $4,000 in Stewart's name on September 3, 1992. Stewart, acting alone, sent $3,500 in his own name on September 8, 1992, and $3,500 in Williams's name on the same date.
 
 
 7
 At sentencing, the district court attributed 576.7 grams to Stewart,[4] a base offense level of 36, and a criminal history I, and sentenced him to 188 months. The district court attributed 1030.3[5] grams to Williams, a base offense level of 36, and a criminal history I, and sentenced him to 210 months.
 
 I.
 
 8
 Stewart claims that his conviction of conspiracy to distribute or possess with intent to distribute cocaine base, pursuant to 21 U.S.C. Sec. 846 and Sec. 841(a)(1) and (b)(a)(A), rested on insufficient evidence. In determining the sufficiency of the evidence on direct appeal, we review the evidence at trial in the light most favorable to the government, Glasser v. United States, 315 U.S. 60, 80 (1942), including all reasonable inferences that can be drawn, United States v. Russell, 971 F.2d 1098, 1109 (4th Cir.1992), cert. denied, --- U.S. ----, 61 U.S.L.W. 3479 (1993). If we find there was substantial evidence to support a finding of guilt, we affirm the conviction. Glasser, 315 U.S. at 80.
 
 
 9
 In establishing a conspiracy pursuant to 21 U.S.C.Sec. 846, the government must prove: 1) an agreement between two or more persons to undertake conduct that would violate the laws of the United States relating to controlled substances, and (2) the defendant's willful joinder in that agreement. See United States v. Clark, 928 F.2d 639, 641-642 (4th Cir.1991). The government need not prove the commission of an overt act in furtherance of the conspiracy. Clark, 928 F.2d at 641. The requisite agreement is frequently proven by circumstantial evidence, United States v. Giunta, 925 F.2d 758, 764 (4th Cir.1991). If a defendant willfully joins in a conspiracy on one occasion, with an understanding of its illegal nature, that is sufficient to convict him of conspiracy, even though he had not participated before, and even though he played only a minor part. United States v. Roberts, 881 F.2d 95, 101 (4th Cir.1989).
 
 
 10
 We are of opinion that the evidence in this case substantially supports the fact that Stewart agreed to act in concert with Williams to commit a drug trafficking offense, although most of the overt acts in furtherance of the conspiracy and the substantive drug offenses are properly attributed to Williams. A brief review of the evidence in the light most favorable to the government reveals the following. Stewart lived with Williams in a small house under circumstances in which it would be difficult not to know of Williams's drug dealings, especially since Williams used Stewart's telephone to facilitate his drug transactions and had his buyers come directly to the house. Stewart participated on six occasions, both with Williams and acting alone, in sending large amounts of cash belonging to Williams to two individuals in Florida by Western Union money orders. At the same time, Stewart knew that Williams was basically unemployed. Stewart drove Williams to one drug exchange at Bell's house. Stewart agreed that Williams could give Stewart's phone number to Detective Siler and heard, without objection, when Williams told Detective Siler of the code that Williams and Stewart would use to indicate the cocaine had arrived. While Stewart points out that there was no direct evidence that he heard or acquiesced in this code, an inference can be drawn from the testimony of Stewart's location (two feet away) in relation to the conversation in which cocaine was specifically mentioned, that he heard the conversation and gave tacit approval to his mentioned participation. We are of opinion that this is substantial evidence from which a jury could infer that Stewart knew of Williams's drug dealing and agreed to and did participate in the drug conspiracy by knowingly providing his residence as a place for Williams's drug dealing, helping with money transfers that he knew were drug-related, and agreeing to participate in the coded telephone conversation for the purpose of facilitating the sale of cocaine to Detective Siler. Thus, the elements of conspiracy pursuant to 21 U.S.C. Sec. 846 are supported by substantial evidence and Stewart's conviction is affirmed.
 
 II.
 
 11
 Stewart next contends that it was error for the district court to repeat it's general instructions as to conspiracy in response to the following jury questions: The jury requests a clarification of the legal term "conspiracy" as regards a person's obligation to determine if illegal activity is occurring in his presence or in his home.
 
 
 12
 Is full knowledge of all details of any illegal activity required for a conspiracy to occur? i.e., Is Mr. Stewart required to know where Mr. Williams got such large amounts of money?
 
 
 13
 In response to that question or these questions, however the same may be called, the district court repeated those portions of its charge with reference to conspiracy which bore upon the questions asked by the jury and correctly told the jury that it could not answer the questions with a simple yes or no. On appeal, the defendant, Stewart, takes the position that the question should have been definitely and precisely answered and that it was reversible error not to do so. The additional charge the court gave to the jury occupies more than eight pages of the transcript. (A.420-429) We have examined that additional charge and believe that it fairly takes into account the questions asked by the jury. And we note that the court told the jury that if they had other questions, they could ask them and that it would be glad to hear from the jury if the jury wished.
 
 
 14
 The jury did not ask any further questions, and we are of opinion that the court acted properly in re-instructing the jury as it did.
 
 III.
 
 15
 Stewart appeals the district court's denial of a reduction of his sentence for his minimal or minor role in the conspiracy, pursuant to U.S.S.G. Sec. 3B1.2(a) or (b), as clearly erroneous under the standard of review set in United States v. Daughtrey, 874 F.2d 213 (4th Cir.1989).
 
 
 16
 In general, such a mitigating role reduction should only be granted where a defendant is so much less culpable than other criminal actors in a group that a distinction among them should be made. United States v. Gordon, 895 F.2d 932, 935 (4th Cir.), cert. denied, 498 U.S. 846 (1990). Application note 2 to U.S.S.G. Sec. 3B1.2 indicates an intention that the downward adjustment for minimal participation will be granted infrequently. The issue here, as in United States v. Palinkas, 938 F.2d 456, 460 (4th Cir.1991), is not whether Stewart was less culpable than Williams, but whether any lesser culpability is so great as to warrant a reduction of sentence. Palinkas instructs that the emphasis is not only on the number of bad acts of a defendant, but whether the defendant's acts are material or essential to committing the crime. The district court determined that Stewart's providing living space to Williams and a location for the selling and storing of drugs was not minimal or minor but was vital to the success of the conspiracy. We hold that this finding was not clearly erroneous.
 
 IV.
 
 17
 Both Stewart and Williams appeal their sentences on the basis that the amount of drugs attributed to them under the relevant conduct provisions of the Sentencing Guidelines was clearly erroneous. Stewart claims that the district court erred in attributing the 336.6[6] grams of cocaine base seized on the day of Stewart's arrest because a drug transaction of that size was not clearly foreseeable to Stewart, as required by U.S.S.G. Sec. 1B1.3(a)(1)(B). Williams appeals the amount of cocaine base used to calculate his Guidelines sentence, with his objection being the district court's conversion of the $10,000 found in William's room into its cocaine base equivalent at the selling price of crack cocaine in the Mt. Airy area, which the district court determined to be $1200 per ounce. Since a district court's determination of the amount of drugs to be considered as relevant conduct for the purpose of calculating a defendant's base offense level is factual in nature, we review for clear error. See United States v. Adams, 988 F.2d 493, 495 (4th Cir.1993).
 
 
 18
 Stewart argues that the sale of 336 grams to Detective Siler was not foreseeable to him because that sale was so much larger than any that Williams had previously made and claims that the government presented no evidence that this unusually large amount of drugs was foreseeable to Stewart. Stewart, however, was involved in the sending of $17,000 in Western Union money orders that represented drug money during approximately a two and one-half month period. Evidence was presented that Stewart was aware of a drug shipment coming in that was destined for Detective Siler and was also aware that Williams was selling drugs in at least multiple ounce quantities. We are of opinion that, with this evidence before the district court, it was not clearly erroneous to attribute the 336 grams to Stewart as reasonably foreseeable to him in furtherance of the conspiracy.
 
 
 19
 Finally, we are of opinion that the district court was not clearly erroneous in converting the cash in Williams' room to its equivalent in drugs. In United States v. Uwaeme, 975 F.2d 1016, 1020 (4th Cir.1992), we noted that district courts have not been reversed for converting cash to drug equivalents under the Guidelines "using only fluctuating and transitory street values ... [that] are neither scientifically nor statistically precise." Uwaeme, 975 F.2d at 1019. The district court relied on the pre-sentence report's determination that $1200 per ounce was the prevailing rate in the Mt. Airy area and this rate was supported by the testimony of Bell that he was purchasing cocaine base from Williams for $650 a half-ounce. As for the source of the money in Williams's room, the district court was not clearly erroneous in concluding that Williams, who was unemployed and selling drugs, had gotten this money from drug sales.
 
 
 20
 The convictions and sentences of Stewart and Williams are accordingly
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 All drug amounts referenced in this factual account are those admitted at trial pursuant to a stipulation. These amounts differ somewhat from those used in the pre-sentence report. However, these differences would not change the base offense levels and thus, would not affect the sentencing
 
 
 [2]
 This amount was inadvertently omitted from the sentencing calculations; however, adding this amount does not change the base offense level and so has no effect on the sentences imposed on either Stewart or Williams
 
 
 [3]
 This was the only part of the conversation that Captain Halasz heard, due to the limited range of the wire transmitter and the fact that he was in a moving vehicle
 
 
 [4]
 This amount is the total of the sales of July 16, July 23, and August 13; the drugs seized on September 19; and 128 grams the district court added as the drug equivalent of the seized $10,111.25 in cash, at the rate of $1200 an ounce, less 110 grams as the amount sold to Detective Siler prior to the arrest. The district court subtracted the 110 grams in order to avoid double counting as drugs, cash that was received for selling drugs already counted. Using the stipulated amounts, his total would be 571 grams, still an offense level of 36. The sale of 23.7 grams on August 10 was not added to Stewart's or Williams's total, either by the presentence reports or the district court. The government, apparently incorrectly, concludes that the 22.9 grams found in Williams's room were inadvertently left out of both defendants' sentencing calculations
 
 
 [5]
 The district court added 453.6 grams to the 576.7 calculated for Stewart to come up with Williams's total. The 453.6 grams represent Williams's sales to Harris for the period of February to July of 1992
 
 
 [6]
 As noted previously, the amount of cocaine base stipulated at trial as being seized on the day of arrest would be 319.3 and 22.9, for a total of 342.2 grams. The district court attributed 576.70 grams to Stewart, the argument goes that the 336.3 grams should not have been included in the 576.70 grams total