51 F.3d 269
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Edmond Lowell HANNAH, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Patrick HANNAH, Defendant-Appellant.
 Nos. 94-5555, 94-5656.
 United States Court of Appeals, Fourth Circuit.
 Submitted March 7, 1995.
Decided March 29, 1995.
 
 Kelly K. Kemp, Ziegler, Gunnoe & Kemp, Hinton, WV, for appellant Edmond Hannah; W. Richard Staton, Moler, Staton & Houck, Mullens, WV, for appellant Patrick Hannah. Rebecca A. Betts, United States Attorney, John C. Parr, Assistant United States Attorney, Charleston, WV, for appellee.
 Before WILKINS, NIEMEYER, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Edmond Lowell Hannah was convicted of conspiracy to distribute, and to possess with intent to distribute, more than fifty grams of crack cocaine, distribution of more than fifty grams of crack on December 16, 1993, and distribution of more than five grams of crack on December 15, 1993. He received a 262-month sentence, supervised release of ten years, and a special assessment of $150. His brother, Patrick Hannah, was convicted on the same conspiracy charge and the December 16 distribution charge. He was sentenced to 121 months in prison, supervised release of five years, and a special assessment of $100. They appeal their convictions and sentences. We affirm.
 
 
 2
 * In December 1993, a confidential informant, Gerard Evans, informed a drug task force in Raleigh County, West Virginia, that he had traveled with Edmond several times to the Washington, D.C. metropolitan area to obtain crack cocaine. Shortly after contacting the task force, Evans again went with Edmond in Edmond's car to purchase crack. They went to the home of Patrick Britton, where Evans watched Britton and Edmond cook cocaine into crack.
 
 
 3
 Upon their return to West Virginia, Edmond and Evans negotiated the sale to Evans of one ounce of crack. Evans again contacted the police. On December 15, the police wired Evans and gave him $500 in cash; the serial numbers of the bills had been recorded. Officers in surveillance units monitored the meeting between Edmond and Evans.[1] Edmond entered Evans' vehicle. Evans gave Edmond the $500 as a down payment for the crack. Edmond, in turn, gave Evans more than twenty-five grams of crack. They negotiated a deal for the next day. During the conversation, Edmond informed Evans that he had obtained twelve ounces of crack on their Washington trip.
 
 
 4
 On December 16, Edmond agreed to "front" Evans three ounces of crack in return for $1000. Edmond informed Evans that Patrick would deliver the drugs and that Evans should pay Patrick the $1000.
 
 
 5
 Patrick arrived at Evans' home with a package containing roughly fifty-three grams of crack. Upon request, Evans gave Patrick the $1000.[2] Patrick subsequently was arrested. Officers recovered the $1000, and they discovered in Patrick's wallet $20 of the money from the previous day's transaction. The crack was recovered from Evans. When officers later arrested Edmond, they recovered $440 of the money from the December 15 transaction.
 
 II
 
 6
 Edmond asserts that his trial counsel rendered ineffective assistance by failing to put on a defense at trial and not investigating potential defense witnesses; by not moving to suppress the tapes and drugs presented by the Government at trial; and by not vigorously cross-examining Evans in an effort to impeach him. In this Circuit, "a claim of ineffective assistance should be raised in a 28 U.S.C. Sec. 2255 [ (1988) ] motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance." United States v. Williams, 977 F.2d 866, 871 (4th Cir.1992), cert. denied, 113 S.Ct. 1342 (1993). Based on our review of the record, there has been no such showing, and the claim is not properly before us.
 
 III
 
 7
 Patrick and Edmond assert that the district court erred in not permitting counsel to fully cross-examine Evans about any inducements he might have had to testify. The transcript reflects that, on cross-examination, Evans testified that he was facing potential state sentences for separate drug offenses. When defense counsel inquired about the nature of the offenses, the Government objected. The objection was sustained under Fed.R.Evid. 609.
 
 
 8
 Rule 609 permits the use of a prior conviction to attack the credibility of a witness if the conviction was punishable by imprisonment of more than one year or involved dishonesty or false statement. See United States v. Cunningham, 638 F.2d 696, 697-98 (4th Cir.1981). Because of several considerations, such as relevancy, only limited information about the conviction and the circumstances of the crime is admissible. United States v. Pandozzi, 878 F.2d 1526, 1533-34 (1st Cir.1989); see United States v. Mitchell, 1 F.3d 235, 244-45 (4th Cir.1993).
 
 
 9
 In the subject case, the district court properly sustained the objection to the factual details of Evans' state convictions. Even if this was error, it was harmless, given the abundant evidence of guilt, including the recorded drug transactions and the seizure of drugs and money.
 
 IV
 
 10
 Edmond and Patrick complain that their relevant conduct should be limited to the drugs (three and one-half ounces) seized by law enforcement officers. Each defendant, however, was held responsible for twelve ounces. Under the Drug Quantity Table, twelve ounces converts to 340 grams, requiring a base offense level of 34. United States Sentencing Commission, Guidelines Manual, Sec. 2D1.1(c)(5) (Nov.1993).
 
 
 11
 "The Government bears the burden of proving by a preponderance of the evidence the quantity of drugs for which a defendant should be held accountable at sentencing." United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir.1993). The determination of the quantity to be considered as relevant conduct for the purpose of calculating a base offense level is a factual question and is subject to the clearly erroneous standard of review. United States v. Adams, 988 F.2d 493, 495 (4th Cir.1993).
 
 
 12
 Offense levels are not necessarily to be determined with reference only to the conduct with which a defendant is charged and convicted. See U.S.S.G. Sec. 1B1.3(a)(1). In drug offenses, moreover, uncharged conduct may be used to calculate the sentence if that conduct is part of a common scheme or plan or part of the same course of conduct as the offense of conviction. United States v. Cusack, 901 F.2d 29, 32-33 (4th Cir.1990); United States v. Cousineau, 929 F.2d 64, 67 (2d Cir.1991); U.S.S.G. Sec. 1B1.3(a)(2).
 
 
 13
 The district court accepted the recommendation in the presentence report that twelve ounces constituted the appropriate relevant conduct. The court noted specifically Edmond's recorded statement to Evans that he had purchased twelve ounces of crack on the trip to the Washington area. The object of the conspiracy was to distribute crack which Edmond obtained on his trips to Washington. Patrick took an active part in the conspiracy by delivering drugs, collecting drug debts, and profiting from the drug transactions. The court's finding that relevant conduct was twelve ounces was not clearly erroneous.
 
 V
 
 14
 Patrick contends that his offense level should have been reduced by two levels because of his alleged acceptance of responsibility. U.S.S.G. Sec. 3E1.1. In support of this contention, Patrick points to his cooperation upon arrest and his regret for allowing his brother to involve him in the brief transaction on December 16.
 
 
 15
 The record reflects that Patrick denied both to the court and a probation officer that he was aware that Edmond was a drug dealer. Additionally, he claimed not to know, until he arrived at Evans' residence and realized what was in the bag Edmond had given him, that he was delivering drugs to Evans. The district court found that Patrick was not truthful when he said that he had no knowledge of Edmond's and Evans' drug dealings. Given the evidence, the finding was not clearly erroneous. Further, Patrick elected to put the Government to its burden of proof by going to trial. His is not one of the "rare" situations identified in the guideline commentary where a defendant who goes to trial might be entitled to a reduction in his offense level. See U.S.S.G. Sec. 3E1.1, comment. (n.2). The finding that Patrick was not entitled to the reduction was not clearly erroneous.
 
 VI
 
 16
 Edmond contends that the district court incorrectly assigned him a criminal history category of four. He maintains that the court should not have counted a 1989 offense which occurred in Summers County, West Virginia.
 
 
 17
 Edmond's presentence report reflects that on October 11, 1989, he pled no contest to having a loaded gun in a vehicle and was fined. Under U.S.S.G. Sec. 4A1.1(c), he was assigned one criminal history point for this offense. No written objection was made; however, at sentencing, Edmond orally objected. He contended that at a prior proceeding before the same district judge, she had not included this conviction when calculating his criminal history. The district judge responded that she did not recall this incident.
 
 
 18
 Edmond gave no specifics about the court's alleged previous refusal to assess one point for the conviction. He did not demonstrate that the prior conviction had been ruled invalid or that it was obtained in violation of his right to counsel. The conviction was therefore properly counted when his criminal history category was calculated. See Custis v. United States, 114 S.Ct. 1732 (1994).
 
 VII
 
 19
 We accordingly affirm both the convictions and sentences. As our review of the materials before us reveals that it would not significantly aid the decisional process, we dispense with oral argument.
 
 AFFIRMED
 
 
 [1]
 The tape recording of the meeting was played at trial
 
 
 [2]
 Evans obtained the money from the police