**UNITED STATES of America, Appellee,**

v.

**Priscilla R. SCOTT, a/k/a "Pat" and "Red," Appellant.**

No. 83–5022.

United States Court of Appeals, Fourth Circuit.

Submitted Nov. 4, 1983.

Decided Jan. 3, 1984.

William R. Metzner, Wheeling, W.Va., on brief, for appellant.

William A. Kolibash, U.S. Atty., H.F. Salsbery, Jr., Asst. U.S. Atty., Wheeling, W.Va., on brief, for appellee.

Before RUSSELL, WIDENER and HALL, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

The defendant Priscilla R. Scott appeals her convictions, following a jury trial, of two counts of possession of cocaine in violation of 21 U.S.C. § 844(a) and one count of possession of marijuana in violation of 21 U.S.C. 841(a)(1).[1] The sole issue pressed by her on this appeal is the sufficiency of evidence. We find the evidence sufficient and affirm the convictions.

The Government's evidence showed that the defendant received what purported to be cocaine during the summer of 1981 in Monongalia County, West Virginia on a number of occasions. The witness Robert T. Foster testified that the defendant purchased a gram of cocaine from him three or four times, and that he charged the defendant $100 per gram at such sales. The witness Beverly Ann Myers testified that on two other occasions she delivered cocaine obtained from Foster to the defendant. In these transactions with Myers, the defendant used a code to cloak the transactions, having arranged on one occasion to secure delivery at a rendezvous in a supermarket parking lot and having purchased the cocaine on another occasion at Foster's home.

The critical issue, as posed by the defendant, was the sufficiency of the Government's evidence that the substance obtained by the defendant from Foster and Myers was the statutorily defined controlled substance cocaine. Since the substance delivered by Foster and Myers had not been seized, the Government had been unable to analyze chemically the substance and thereby establish its illicit character in that manner. Neither Foster nor Myers had sufficient experience or familiarity with cocaine to qualify as an expert witness on the nature of the "white powdery substance" they delivered to the defendant. To establish the character of the substance, as within 21 U.S.C. § 812(c), Schedule II(a)(4),[2] the Government relied primarily on the testimony of the witness Roger Lee Ice. This witness had purchased from Foster some "white powdery substance" from "the same batch" from which Foster had taken the powder sold to the defendant. Ice testified that he had used cocaine "quite a bit," that he was familiar with its appearance and its effect, that he had tested the "substance" delivered to him by Foster by "snorting" it, and that he had concluded, based on that experience, it was cocaine. This is the testimony, which, coupled with that of Foster and Myers, was said by the Government to be sufficient to identify the substance possessed by the defendant as cocaine.

It is the defendant's position, however, that the testimony of the witnesses Foster, Myers and Ice was insufficient to prove that the substance possessed by her was the controlled substance cocaine. In advancing this position, the defendant relies on what has come to be known as the "cocaine isomer strategy" or defense.[3] Under this theory of defense, a defendant charged with a cocaine-related offense under 21 U.S.C. § 801 et seq., begins by premising that cocaine, like most organic compounds, has some isomers which, while having the same molecular formula, have different molecular structures. Based on such molecular structural differences resulting as they do in different chemical characteristics, cocaine is divided into two broad classifications, one of which derived from the coca leaves themselves is known as L-cocaine

1. The indictment consisted of four counts. The first count charged conspiracy to possess with intent to distribute marijuana; the second count charged possession of marijuana; the third and fourth counts charged possession of cocaine. The defendant was convicted on counts two, three and four of the indictment and she has appealed her convictions on the three counts. In her brief the defendant has addressed her argument only to her convictions on counts three and four (cocaine) and did not argue her conviction on count two (marijuana).

2. The constitutionality of this provision has been recently upheld in United States v. Alexander, 673 F.2d 287, 288 (9th Cir.1982) cert. denied 459 U.S. 876, 103 S.Ct. 168, 74 L.Ed.2d 139, and United States v. McCormick, 565 F.2d 286, 289 (4th Cir.), cert. denied, 434 U.S. 1021, 98 S.Ct. 747, 54 L.Ed.2d 769 (1978).

3. For a general discussion of the theory see United States v. Ortiz, 610 F.2d 280, 281 (5th Cir.1980), cert. denied, 445 U.S. 930, 100 S.Ct. 1320, 63 L.Ed.2d 764.

and the other developed as a chemically synthesized compound is known as D-cocaine. The defendant in developing this defense posits that of the two classifications only so-called L-cocaine qualifies as a controlled substance under 21 U.S.C. § 812(c), Schedule II(a)(4). It follows under this theory that in order to find a controlled substance under § 812, the Government must prove that the substance in question is specifically L-cocaine and not D-cocaine.[4] Whether a substance fits the test of L-cocaine, as distinguished from D-cocaine, can be determined, under the conventional argument, only by the use of a polarimeter test. Following this reasoning, the defendant in this case claims that, since the Government's evidence consists of merely lay testimony on the nature of the substance in question, there is a fatal absence of proof that the substance purchased and received by her was L-cocaine and thus within the statutory prohibition.

As another court has remarked, this Court is "no stranger" to the "cocaine isomer" theory.[5] When confronted with the defense, we, like other courts, have been unwilling to accept the basic premise of the theory that only cocaine derived from coca leaves (L-cocaine) is within the statutory prohibition since the statutory definition expressly comprehends both cocaine derived from coca leaves *and its chemical equivalent.* On the contrary, the rule adopted by the courts, including our own, which have confronted the defense, is that the character of cocaine, *i.e.,* whether it is within the statutory prohibition or not, may be established circumstantially by lay testimony and, provided such circumstantial evidence is adequate, the determination whether the substance in question is within the statuto-

ry prohibition is one for the jury; and, in that connection, courts have normally refused to instruct that D-cocaine is not a controlled substance within the statute. *See United States v. Bockius,* 564 F.2d 1193, 1194, n. 1 (5th Cir.1977).[6] Such was our firm declaration in *United States v. Gregorio,* 497 F.2d 1253, 1263 (4th Cir.), *cert. denied,* 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1975). In that case, just as here, "no samples were admitted into evidence, no samples were subject to chemical analysis, and there was no expert testimony from medically or scientifically trained persons;" the Court relied on lay testimony by users like the witness Ice to establish that the "white, powdery, crystalline substance" in that case qualified as a prohibited controlled substance. We affirmed this reasoning in *United States v. Fince,* 670 F.2d 1356, 1358 (4th Cir.1982), *cert. denied,* 456 U.S. 982, 102 S.Ct. 2254, 72 L.Ed.2d 860, and *United States v. Dolan,* 544 F.2d 1219, 1221 (4th Cir.1976). *See also United States v. Hall,* 552 F.2d 273, 276 (9th Cir.1977).

In *Dolan,* we said:

"Second, lay testimony and circumstantial evidence may be sufficient, without the introduction of an expert chemical analysis, to establish the identity of the substance involved in an alleged narcotics transaction, *United States v. Gregorio* (4th Cir.1974), 497 F.2d 1253, 1263, *cert. denied,* 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974). Such circumstantial proof may include evidence of the physical appearance of the substance involved in the transaction, evidence that the substance produced the expected effects when sampled by someone familiar with the illicit drug, evidence that the substance was used in the same manner as

---

**4.** In *United States v. Posey,* 647 F.2d 1048, 1051 (10th Cir.1981), the separate existence of D-cocaine was disputed in the Government's testimony.

**5.** *United States v. Ortiz,* 610 F.2d at 281.

**6.** The Court said in *Bockius,* in that connection:
"In addition, both courts [*United States v. Orzechowski,* 7 Cir.1977, 547 F.2d 978, 985, and *United States v. Hall,* 9 Cir.1977, 552

F.2d 273, 274] refused to require district courts to instruct specifically that D-cocaine is not chemically identical or equivalent to coca leaves and any salt, compound, derivative or preparation thereof. Instead, the Courts approved instructions that left to the jury a factual question whether the cocaine isomers other than L-cocaine fell within the statutory prohibition." 564 F.2d at 1194, n. 1.

the illicit drug, testimony that a high price was paid in cash for the substance, evidence that transactions involving the substance were carried on with secrecy or deviousness, and evidence that the substance was called by the name of the illegal narcotic by the defendant or others in his presence, . . . ." 544 F.2d at 1221.

Again, in *Fince,* the defendant had moved for the appointment of a chemist in order "to develop what has been termed as an 'isomer defense' upon the theory that there are certain species of cocaine which are not violative of the federal statutes covering the subject." 670 F.2d 1357–58. In sustaining the denial of the motion by the District Court, we said (670 F.2d at 1358):

"Such a 'species defense' was summarily rejected by us with respect to marijuana in *United States v. Sifuentes,* 504 F.2d 845 (4 Cir.1974), and in our opinion, the 'isomer defense' proposed by the appellant in this case is equally meritless. *See United States v. Rosado-Fernandez,* 614 F.2d 50, 53 (5 Cir.1980)."[7]

■ The circumstantial evidence in this case, considered in the light most favorable to the Government, was clearly such as to permit a rational conclusion by the jury that the defendant was guilty of possessing a controlled substance in the form of cocaine or its chemical equivalent. Every fact listed in *Dolan* for establishing circumstantially the illegal character of the cocaine possessed by the defendant was present: The substance had the appearance of illicit cocaine; when sampled and tested by an experienced user of cocaine, it had the effect of cocaine; the price paid for the substance was "high;" its sale and delivery were conducted furtively and with deviousness; and finally, all persons dealing with the substance treated and dealt with it as cocaine. This evidence was found sufficient in *Dolan* to meet the Government's burden of proof and we find it sufficient in this case.

7. *See also United States v. Hall, supra,* 552 F.2d at 276.

For the foregoing reasons the judgments of conviction are

AFFIRMED.[8]

8. Upon motion of both parties, this case was submitted on the briefs, without oral argument, pursuant to Rule 34 of the Federal Rules of Appellate Procedure.