60 F.3d 826
NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Don Anthony GUERRA, a/k/a Minister, a/k/a Mini, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ashberth Sherran GUERRA, a/k/a Trinny, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ben CANTEEN, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Peter JOHNSON, Defendant-Appellant.
 Nos. 94-5616, 94-5617, 94-5618 and 94-5638.
 United States Court of Appeals, Fourth Circuit.
 Argued May 4, 1995.
Decided June 30, 1995.
 
 Appeals from the United States District Court for the District of South Carolina, at Charleston. Solomon Blatt, Jr., Senior District Judge. (CR-93-387)
 ARGUED: William Lee Runyon, Jr., Charleston, SC; John Robert Haley, Charleston, SC; Lawrence J. Rosintoski, L.J. ROSINTOSKI, P.A., North Charleston, SC, for Appellants. Bruce Howe Hendricks, Assistant United States Attorney, Charleston, SC, for Appellee. ON BRIEF: Peter Dominick DeLuca, Jr., Goose Creek, SC, for Appellant Canteen. J. Preston Strom, Jr., United States Attorney, Benjamin A. Hagood, Assistant United States Attorney, Charleston, SC, for Appellee.
 OPINION
 PER CURIAM:
 
 
 1
 Appellants are four federal and state prisoners who were housed together in the Georgetown, South Carolina, County Detention Center. They were convicted in federal district court on charges arising out of an escape attempt and jailhouse drug distribution. The prisoners now appeal. Because we find no error at either trial or sentencing, we affirm.
 
 I.
 
 2
 Don Anthony Guerra and Ashberth Sherran Guerra were initially incarcerated at the detention center pending sentencing for federal drug convictions. For those crimes, the Guerras faced possible terms of life without parole. Peter Johnson was also imprisoned at the detention center for violating federal drug laws; he was housed in an area known as the "bull pen." Ben Canteen, a state prisoner, was serving a life sentence at the center.
 
 
 3
 Although the prisoners rotated cells, the Guerras spent the bulk of their time in cell number seven and in the bull pen. With hacksaws procured and delivered by Canteen, the Guerras sawed off the bars in the window of cell seven and in a window behind the bull pen. While the Guerras worked on the bull pen window, Johnson stood guard. In exchange for those services, the Guerras supplied Johnson with marijuana.
 
 
 4
 To ensure that they would have funds with which to support themselves once they were free, the Guerras sold marijuana and crack cocaine to their fellow inmates. Canteen, who was permitted to move about the jail due to his "trusty" status, transferred the drugs and money between the Guerras and their customers. Just as the Guerras were about to make their break, two inmates alerted prison officials to the planned escape. The escape was thus foiled.
 
 
 5
 A federal grand jury thereafter indicted the four prisoners on numerous counts. After a jury trial, they were each convicted. Don Guerra was convicted of conspiring to escape, attempting to escape, and obstructing justice. Ashberth Guerra was found guilty of the same charges, as well as conspiring to distribute crack cocaine and possessing crack cocaine with intent to distribute. Canteen was convicted of conspiring to escape, conspiring to distribute crack cocaine, aiding in the escape of a federal prisoner, and obstructing justice. Johnson was convicted of conspiring to escape, aiding in the escape of a federal prisoner, obstructing justice, and possessing marijuana.
 
 
 6
 The district court sentenced appellants under the applicable provisions of the Sentencing Guidelines. In a separate proceeding, the Guerras were subsequently sentenced to life without parole for their prior drug convictions, to run concurrently with the sentences imposed in this case. Appellants now seek review of the district court's judgment.
 
 II.
 
 7
 Appellants raise various individual and collective claims of error. We shall address them in turn.
 
 A.
 
 8
 First, the Guerras claim that the district court abused its discretion by allowing the government to introduce evidence of the fact that they were facing life sentences without parole at the time of the escape attempt. The government counters that the evidence was admissible under Federal Rule of Evidence 404(b) to establish motive and intent, and that its probative value outweighed any prejudicial effect. We agree.
 
 
 9
 To be admissible under Rule 404(b), evidence of other acts to show motive, opportunity, intent, and the like, must satisfy a three-pronged test. The evidence must be relevant to an issue besides character, reliable, and necessary to the presentation of the case. United States v. Greenwood, 796 F.2d 49, 53 (4th Cir.1986). Appellants do not contend that the evidence was unreliable or irrelevant, only that it was unnecessary. In particular, they complain that the prosecution offered other evidence of intent--testimony by inmates who overheard the Guerras planning their escape--and thus did not need to raise the matter of the life sentences.
 
 
 10
 We think it clear that the possibility of a life sentence without parole might motivate a prisoner to escape custody. Where the government has such evidence of intent, it need not be excluded just because other proof of motive is also proffered to the jury. Contrary to appellants' suggestion, nothing in Rule 404(b) limits the government to one piece of proof per element of the crimes charged. Moreover, the evidence at issue provided a context for the escape attempt and was thus necessary " 'to complete the story of the crime on trial.' " United States v. Masters, 622 F.2d 83, 86 (4th Cir.1980) (citation omitted). The district court's decision to admit the evidence was therefore within the bounds of its discretion. United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir.1988).
 
 B.
 
 11
 The Guerras next argue that the district court erred in refusing to allow their counsel to argue to the jury that they did not deserve the punishment that would await them upon conviction. Appellants concede that circuit law is squarely against them on this point, in so far as we have held that any argument on the matter of punishment is exclusively within the province of the trial court. See United States v. Ramantanin, 452 F.2d 670, 672 (4th Cir.1971); see also United States v. Del Toro, 426 F.2d 181, 184 (5th Cir.), cert. denied, 400 U.S. 829 (1970). We thus affirm the district's court decision not to permit argument on the issue of punishment to the jury.
 
 C.
 
 12
 Appellants also maintain that certain provisions of the Sentencing Guidelines are unconstitutional. Specifically, Ashberth Guerra contends that Sec. 2D1.1 violates the Fifth and Eighth Amendments, while Johnson and Canteen level the same charge against Sec. 2J1.2. These claims are unfounded.
 
 
 13
 With respect to Sec. 2D1.1, which imposes a higher base offense level for convictions involving cocaine base (or "crack") rather than pow der cocaine, this court--along with every other circuit court to address the question--has found that section constitutional. See United States v. Jones, 18 F.3d 1145, 1151 (4th Cir.1994); United States v. Bynum, 3 F.3d 769, 774-75 (4th Cir.1993), cert. denied, 114 S.Ct. 1105 (1994); United States v. Thomas, 900 F.2d 37, 38-40 (4th Cir.1990), cert. denied, 113 S.Ct. 144 (1992). We decline appellant's invitation to overturn our precedent.
 
 
 14
 Section 2J1.2 governs the obstruction of justice. It instructs that if the obstruction of justice offense "involved obstructing the investigation or prosecution of a criminal offense" the sentencer shall "apply Sec. 2X3.1 (Accessory After The Fact) ... if the resulting offense level is greater than" for the obstruction of justice offense. U.S.S.G. Sec. 2J1.2(c)(1). That is precisely what the district court did in sentencing Johnson and Canteen.
 
 
 15
 In United States v. Aragon we rejected a challenge to this cross-reference provision in strikingly similar circumstances. See 983 F.2d 1306, 1315-16 (4th Cir.1993). As an initial matter, we note that in Aragon the provision was triggered by the fact that the object of the escape attempt in that case was to permit a prisoner to avoid sentencing. Id. at 1315-16. Thus, the language of Sec. 2J1.2(c)(1)--"the investigation or prosecution of a criminal offense"--encompasses the obstruction of sentencing as well as the obstruction of trial or pre-trial investigations.
 
 
 16
 Moreover, as we explained in Aragon, the very purpose of the cross-reference is to address situations like the instant one, where obstruction of justice is " 'part of an effort to ... to assist another person to escape punishment for an offense.' " Id. at 1316 (quoting Guidelines commentary to Sec. 2J1.2). We think it reasonable to believe that such conduct is more blameworthy than simple obstruction of justice, and that the attendant increase in punishment is not so disproportionate to the offense as to violate due process. In short, neither Sec. 2D1.1 nor Sec. 2JI.2 is unconstitutional.
 
 D.
 
 17
 Ashberth Guerra contends that the trial court erred in sentencing him under the provisions of the Sentencing Guidelines that deal with cocaine base. Instead, he urges, the trial court should have applied the powder cocaine provisions, which would have produced a lower base offense level. See U.S.S.G. Sec. 2D1.1. To support this assertion, appellant invokes the rule of lenity, which allows the sentencer to impose the lesser of two possible penalties if the relevant sentencing statute is ambiguous. BiFulco v. United States, 447 U.S. 381, 387 (1980).
 
 
 18
 The rule of lenity simply does not apply in this case. Ashberth Guerra was convicted of distributing crack cocaine. There is nothing unclear about the distinction that the Guidelines make between the base offense levels for crack cocaine and regular cocaine. See U.S.S.G. Sec. 2D1.1(c) (Drug Quantity Table). In any event, defense counsel failed to raise this objection below, which limits our review to one for plain error. United States v. Grubb, 11 F.3d 426, 440 (4th Cir.1993). In view of the clarity of the Guidelines, the district court did not commit error, much less plain error, by sentencing Guerra for selling cocaine base rather than powder cocaine.
 
 E.
 
 19
 Ashberth Guerra and Canteen ascribe as error the amount of drugs that the district court attributed to them under Sec. 2D1.1 of the Guidelines. See U.S.S.G. Sec. 2D1.1, Commentary 12 ("Where there is no drug seizure ... the court shall approximate the quantity of the controlled substance."). In estimating the amount of drugs in which they trafficked, the district court relied on the presentence report that calculated the amount based on the street price of the drugs. Appellants argue that the jailhouse value of drugs exceeds the street value, and from that fact they deduce that the district court attributed to them excessive amounts.
 
 
 20
 Where there is no actual seizure and the court must estimate the amount based on other variables like price, perfect accuracy is not required. United States v. Uwaeme, 975 F.2d 1016, 1021 (4th Cir.1992). Nor has there been any contention that the presentence report lacked sufficient indicia of reliability to support its probable accuracy. Id. Furthermore, erecting a legal distinction between drug prices in the open market and in jail would effectively favor jailhouse traffickers by reducing the quantities imputed to them. For these reasons, the district court's attribution based on street price was reasonable, and certainly not clearly erroneous. United States v. D'Anjou, 16 F.3d 604 (4th Cir.), cert. denied, 114 S.Ct. 2754 (1994).*
 
 F.
 
 21
 Finally, appellants claim that the district court erred in denying their motion for an acquittal on the obstruction of justice count. They argue that the government's case was defective because there is no evidence that the Guerras would have successfully evaded sentencing had they escaped.
 
 
 22
 We think it clear that this count should have been submitted to the jury. The government put on multiple witnesses who testified that the Guerras' very purpose in attempting to escape was to avoid sentencing, which clearly would have interfered with the administration of justice. See Aragon, 983 F.2d at 1316. Evidence that the Guerras would have actually evaded sentencing is not a necessary predicate for obstruction of justice. See 18 U.S.C. Sec. 1503 (obstruction of justice occurs when a person "influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice") (emphasis added). Thus, allowing the obstruction of justice count to proceed to the jury was not error.
 
 III.
 
 23
 The judgment of the district court is in all respects
 
 
 24
 AFFIRMED.
 
 
 
 *
 Although Canteen did not raise the point in his brief, we note that the drugs actually sold by Guerra are fairly attributable to Canteen. Participants in drug conspiracies are responsible for the entire amount of drugs in which the conspiracy trafficked, not just the quantity they personally bought or sold, so long as the amount was reasonably foreseeable to them. United States v. D'Anjou, 16 F.3d 604, 614 (4th Cir.1994). There can be no question that Canteen knew or should have known that Ashberth Guerra was dealing in the amount of drugs that he was: Canteen was, after all, the person who carried the drugs back and forth between the Guerras and their buyers