**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 94-5081

DESMOND SAMUEL SKYERS, a/k/a Desi
Skyers, a/k/a Colin Green, a/k/a
Skip Skyers,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, District Judge.
(CR-93-38)

Argued: January 29, 1996

Decided: March 13, 1996

Before MURNAGHAN, ERVIN, and WILKINS, Circuit Judges.

_____

Affirmed in part and vacated and remanded in part by unpublished
per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Kevin Michael Schad, Cincinnati, Ohio, for Appellant.
John Douglas McCullough, Assistant United States Attorney,
Raleigh, North Carolina, for Appellee. **ON BRIEF:** Janice McKenzie
Cole, United States Attorney, Ted F. Mitchell, Third Year Law Stu-
dent, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Desmond Samuel Skyers appeals his convictions for conspiracy to import and export cocaine, see 21 U.S.C.A.§ 963 (West Supp. 1995); conspiracy to possess with the intent to distribute cocaine, see 21 U.S.C.A. § 846 (West Supp. 1995); and aiding and abetting the importation of cocaine, see 18 U.S.C.A.§ 2 (West 1969); 21 U.S.C.A. § 952 (West 1981 & Supp. 1995), and his resulting life sentence. Although we find no error warranting reversal of Skyers' convictions, we remand for resentencing because the district court lacked a sufficient basis for converting the entire amount of cocaine for which it held Skyers accountable into cocaine base. Accordingly, we affirm Skyers' convictions, but remand for resentencing.

I.

During Skyers' trial, the Government presented the testimony of numerous coconspirators who had transported cocaine powder for Skyers from Antigua to destinations within the United States, including Miami, New York, Washington, D.C., and the Raleigh-Durham area in North Carolina. These coconspirators testified concerning the details of how Skyers and others participated in a conspiracy to import cocaine powder obtained from Antiguan suppliers Wayne Jagoo and Artland Lewis by recruiting and compensating couriers, arranging their travel to and from Antigua, and furnishing money for and securing the drugs after delivery into this country. Another coconspirator testified that he was recruited by Skyers and distributed cocaine base (crack) over a three-year period on behalf of the Skyers organization from a house the witness owned in Washington, D.C. Yet another witness testified concerning her activities in transporting cocaine powder from Miami to England for Skyers.

2

At sentencing, the district court determined that Skyers should be held accountable for 42 kilograms of cocaine base, rendering a base offense level of 42. See United States Sentencing Commission, Guidelines Manual, § 2D1.1(c)(1) (Nov. 1993).**1** With a two-level enhancement for possession of a firearm, see U.S.S.G. § 2D1.1(b)(1), and a four-level enhancement for being the organizer of criminal activity involving at least five participants, see U.S.S.G. § 3B1.1(a), Skyers' adjusted offense level mandated a life sentence, see U.S.S.G. Ch. 5, Pt. A.

II.

Skyers raises several challenges to his convictions, none of which merits lengthy discussion.

He first contends that the evidence is insufficient to support his conspiracy convictions. This argument is meritless. Viewed in the light most favorable to the Government, there was ample evidence from which a reasonable juror could have found Skyers guilty beyond a reasonable doubt. See Glasser v. United States , 315 U.S. 60, 80 (1942).

Skyers next alleges that the district court improperly admitted, or refused to strike, certain testimony. He claims that the district court erred by permitting Agent McDonald to testify to inadmissible hearsay, by refusing to strike the testimony of Wendy Moore as incredible as a matter of law, and by allowing Agent Free to testify concerning unexplained deposits to the bank account of Skyers' brother and alleged coconspirator. We find no error. See United States v. Heater, 63 F.3d 311, 320-21 (4th Cir. 1995) (admission of testimony by district court reviewed for abuse of discretion), cert. denied, 116 S. Ct. 796 (1996); United States v. Lindell, 881 F.2d 1313, 1322 (5th Cir. 1989) (testimony incredible as a matter of law only when it is "so unbelievable on its face that it defies physical laws"), cert. denied, 493 U.S. 1087 and 496 U.S. 926 (1990). But, even if Skyers were correct that the district court had incorrectly permitted this testimony,

_____

**1** Section 2D1.1(c) has since been amended to reduce the highest base offense level available under the Drug Quantity Table to level 38. See U.S.S.G. § 2D1.1(c)(1) (Nov. 1994).

any error would be harmless. See United States v. Nyman, 649 F.2d 208, 211-12 (4th Cir. 1980) (nonconstitutional error is harmless if it can be said with fair assurance that the error did not substantially sway the judgment).

Finally, we reject Skyers' claim that the district court erred in failing to give two jury instructions relating to the credibility of cooperating codefendants. Although the district court did not charge the jury in the exact words requested by Skyers, the instructions it gave were essentially what he sought and correctly instructed the jury on its duty to evaluate the credibility of the witnesses. See United States v. Morgan, 942 F.2d 243, 247 (4th Cir. 1991).

III.

We find that Skyers' position with respect to his sentence has considerably more merit. He argues that the district court committed clear error in finding he was responsible for 42 kilograms of cocaine powder, that it improperly adopted a 1:1 conversion ratio of cocaine powder to cocaine base without supporting expert testimony, and that the court lacked a proper basis for converting all of the cocaine powder for which it had held him accountable into cocaine base and determining his offense level on the basis of the resulting quantity of cocaine base.[2]

Skyers, however, acknowledged his responsibility for at least 15 kilograms of cocaine powder. And, he recognized that this court has considered it appropriate for a district court to adopt an 88 percent conversion ratio even without expert testimony. [3] See United States v.

_____

[2] Congress chose to treat responsibility for cocaine base 100 times more severely than culpability for an equal quantity of cocaine powder. See 21 U.S.C.A. § 841(b) (West Supp. 1995). Because this approach was incorporated into the guidelines, calculating a defendant's offense level utilizing cocaine base produces a much higher offense level than does the use of an identical quantity of cocaine powder. See U.S.S.G. § 2D1.1(c).

[3] At oral argument, the Government admitted that no evidence sufficient to sustain a 1:1 conversion ratio had been presented to the district court and agreed that the use of an 88 percent conversion ratio would be appropriate.

4

Ricco, 52 F.3d 58, 63 (4th Cir.), cert. denied, 116 S. Ct. 254 (1995). Conversion of the 15 kilograms of cocaine powder for which Skyers admitted responsibility at the 88 percent conversion ratio he concedes is correct would result in the attribution of 13.2 kilograms of cocaine base to him, a quantity of cocaine base sufficient to maintain his adjusted offense level at offense level 43, the level on which his sentence was based. See U.S.S.G. § 2D1.1(c); U.S.S.G. Ch. 5, Pt. A, comment. (n.2) (offense level greater than 43 treated as offense level 43). Accordingly, any error by the district court with respect either to the quantity of cocaine powder for which Skyers was responsible or to the use of a 1:1 conversion ratio without expert testimony is harmless. See Williams v. United States, 503 U.S. 193, 202-03 (1992).

The principal question presented to this court, then, is whether the decision of the district court to convert the cocaine powder into cocaine base was proper. Even when a defendant is convicted of a conspiracy to possess or to distribute cocaine, a sentencing court properly may convert cocaine powder to cocaine base for purposes of determining the defendant's offense level if, for example, the court finds that the object of the conspiracy was to distribute cocaine base or that it was reasonably foreseeable that the cocaine would be distributed as cocaine base. See United States v. McMurray, 34 F.3d 1405, 1414-15 (8th Cir. 1994), cert. denied, 115 S. Ct. 1164 (1995).

The Government maintains that the district court was justified in converting all of the cocaine powder into cocaine base. It contends that, although it was undisputed that Skyers imported only cocaine powder into this country from Antigua and exported only cocaine powder to London, the conversion was proper because the only evidence presented concerning the subsequent distribution of the cocaine Skyers smuggled into this country demonstrated that some portion of it was converted into cocaine base and sold from a house in Washington, D.C. This evidence, the Government claims, supports a conclusion that Skyers intended to convert all of the cocaine powder into cocaine base or that he reasonably foresaw that it would be. The Government also asserts that the majority of Skyers' couriers were addicted to and sometimes were paid in cocaine base. Finally, it notes that approximately six ounces of cocaine base--that allegedly belonged to Skyers--were seized in a search of the home of one of Skyers' coconspirators.

5

This, standing alone, is insufficient to justify conversion of all of the cocaine powder Skyers imported into this country to cocaine base. Cf. United States v. Uwaeme, 975 F.2d 1016, 1021 (4th Cir. 1992) (factual finding at sentencing is not clearly erroneous when "based on evidence possessing sufficient indicia of reliability to support its probable accuracy"). The only evidence to which the Government points that arguably could support a conclusion that Skyers intended or foresaw the conversion of 42 kilograms of cocaine powder into cocaine base is the evidence surrounding distribution of cocaine base from the house in Washington, D.C. However, the Government conceded at oral argument that the evidence before the district court was inadequate to permit any reasoned finding concerning the quantity of cocaine base distributed from this house. Accordingly, we cannot say that this evidence is sufficient to support a conclusion that all of the cocaine powder for which Skyers was held accountable should be converted into cocaine base.

Further, we are unable to conclude that this error is harmless. See Williams, 503 U.S. at 202-03. If Skyers' offense level had been calculated using cocaine powder rather than cocaine base, his adjusted offense level and resulting guideline range would have been lower. And, as the Government has conceded, the present record will not support a determination that Skyers should be held accountable for any quantifiable amount of cocaine base.[4] Consequently, we conclude that a remand is necessary to allow the parties to present evidence and otherwise address the issue of what amount, if any, of cocaine base may properly be used in determining Skyers' offense level.

_____

[4] The attribution of as little as 1.5 kilograms of cocaine base would result in Skyers receiving the same sentence--an attribution that would require a finding that Skyers intended or foresaw the conversion of only approximately 1.71 kilograms of the 42 kilograms of cocaine for which he was held accountable. The Government asserted at oral argument that if permitted the opportunity to do so, it could show that the quantity of cocaine base distributed through the Washington, D.C. house was sufficient to support conversion of this quantity. Perhaps so, but we cannot affirm the finding of the district court on the basis of evidence that may be presented on remand.

IV.

For the foregoing reasons, we affirm Skyers' convictions, but remand for resentencing.

<u>AFFIRMED IN PART; VACATED AND REMANDED IN PART</u>

7