**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 96-4616

ROGER B. BRYANT,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 96-4626

KARL DAVID VIARS,
Defendant-Appellant.

Appeals from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, District Judge.
(CR-95-30)

Submitted: February 17, 1998

Decided: March 17, 1998

Before WILKINS and MICHAEL, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Arthur T. Ciccarello, Sr., CICCARELLO & DEL GIUDICE, Charleston, West Virginia; Thomas G. Dyer, DYER LAW OFFICES, Clarksburg, West Virginia, for Appellants. William D. Wilmoth, United States Attorney, Sam G. Nazzaro, Assistant United States Attorney, Wheeling, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellants Roger Bryant and Karl David Viars entered guilty pleas to conspiracy to manufacture and possess with intent to distribute and to distribute marijuana, in violation of 21 U.S.C.§ 846 (1994), and manufacturing marijuana plants, in violation of 21 U.S.C. § 841(a)(1) (1994). Bryant and Viars were each sentenced to terms of 120 months imprisonment followed by five years supervised release. Both appeal their sentences on the ground that the district court failed to properly determine the number of marijuana plants attributable to them. Having previously granted Appellants' unopposed motion to waive oral argument, we now affirm.

At the joint sentencing hearing, the district court found that Viars was involved with only three of the five marijuana fields identified in the indictment: the upper Wildcat field, the lower Wildcat field, and the eastern Wildcat field. The court further found that Bryant was involved with all five of the marijuana fields: the three Wildcat fields, as well as the Kanawha River tract and the Painter's Run tract.[1]

_____

[1] Although not listed as issues as required by Fed. R. App. P. 28, Bryant appears to argue in the joint opening brief that he should not have been held responsible for the marijuana in the eastern Wildcat, Kanawha

2

At the sentencing hearing, there was conflicting testimony from Government and defense witnesses regarding the number of marijuana plants to be attributed to Appellants for purposes of determining relevant conduct. Utilizing the measurements of the fields, the number of rows of plants, and the distance between plants, the district court devised a formula for calculating the number of plants in each of the five separate fields.[2] In calculating the number of plants, the court assumed that the marijuana was planted every twelve inches.[3] These calculations, for all tracts except the eastern Wildcat tract, resulted in a plant count substantially less than the Government's count and, in each case, was substantially more than Appellants' count. However, the district court calculated 333 plants in the eastern Wildcat field, as opposed to the Government's count of 284. Because the Government's count was more beneficial to Appellants, the court ultimately found that the eastern field contained 284 plants. Appellants accept the calculations of the upper and lower Wildcat fields, as well as the Kanawha River and Painter's Run tracts. They argue, however, that the formula was inapplicable to the eastern Wildcat field, which in contrast to the other Wildcat fields, was not cleared, contained no fencing or identifiable rows or plants, and was not tended or manicured in a similar manner.

The sentencing court must find the quantity of drugs used to compute a base offense level by a preponderance of the evidence. United States v. Johnson, 54 F.3d 1150, 1156 (4th Cir. 1995). We review the

_____

River, or Painter's Run tracts. However, in the joint reply brief, Appellants note that "[t]his appeal has nothing to do with which fields the appellants should have been held accountable . . . those matters have all been clearly conceded by the appellants." Therefore, we will not consider these issues.

[2] There was no objection to the measurements of the fields or the number of rows of plants in each field, with the exception of how many rows the eastern Wildcat field contained. After hearing evidence, the district court adopted the probation officer's estimate of nine rows of plants in this field.

[3] The Government's estimate was that the marijuana was planted every two to three inches. Appellants' evidence supported the conclusion that the plants were eighteen inches to two feet apart.

court's factual finding under the "clearly erroneous" standard. <u>United States v. D'Anjou</u>, 16 F.3d 604, 614 (4th Cir. 1994). We will reverse only if we are left with the "definite and firm conviction that a mistake has been committed." <u>See United States v. Gypsum</u>, 333 U.S. 364, 395 (1948). We also note that estimates of drug quantity are acceptable so long as they are based on information that has a "sufficient indicia of reliability." <u>United States v. Uwaeme</u>, 975 F.2d 1016, 1021 (4th Cir. 1992).

The Government's evidence that the eastern field contained 284 plants was based on a Government agent's actual count of the plants in the field in mid-August 1995. The agent also testified that the plants were, thereafter, eradicated and burned. Appellants countered with testimony by a private investigator that he counted the marijuana rootballs in the eastern Wildcat field in the Spring of 1996 (after the plants themselves had been destroyed) and arrived at a count of only 23. This was the only evidence presented by Appellants regarding the quantity of plants in the eastern field, and this testimony was explicitly found by the district court to not be credible. (J.A. at 368) (sentencing court states that it was "singularly unimpressed" by the investigator's testimony that there were only 23 plants). Because the district court is better situated to evaluate matters of credibility, we will not review this determination. <u>See D'Anjou</u> , 16 F.3d at 614.

Appellants also point out that the Government agent inappropriately counted stems as separate plants, when they were actually part of the same rootball and, therefore, should have been counted as a single plant. However, Appellants fail to note that the district court's formula took this fact into account. While the court found the Government's estimate to be "aggressive" (based on the double counting), it found Appellants' estimate to be "far to[sic] conservative." (J.A. at 365). Therefore, the court attempted to split the difference in fashioning a formula. While it stands to reason that this manner of estimation would be more beneficial to Appellants in certain fields than others, we cannot find this method to be clearly erroneous. <u>See United States v. Shewmaker</u>, 936 F.2d 1124, 1130 (10th Cir. 1991) (holding that the better practice is to use consistent methods for estimating quantity even where the fields bear different characteristics). We find that the district court's application of a single formula to all the fields rendered inconsistencies as to a single field irrelevant. We,

4

therefore, hold that the district court adopted a consistent and reasonable method for estimating the quantity of plants in all the fields.

After reviewing the record, including the testimony at the trial and the sentencing hearing, we are not left with a definite and firm conviction that a mistake has been made. On the contrary, we find that the district court could deem its formula and the Government's actual count of marijuana plants as sufficiently reliable to make a preponderance finding. Accordingly, we affirm the sentences imposed by the district court.

AFFIRMED