Vacated by Supreme Court, January 24, 2005

**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

DONELL DONTE PADGETT,
          *Defendant-Appellant.*

No. 03-4638

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
John T. Copenhaver, Jr., District Judge.
(CR-03-44)

Submitted: February 27, 2004

Decided: May 26, 2004

Before WIDENER, LUTTIG, and MICHAEL, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

Donald L. Stennett, Charleston, West Virginia, for Appellant. Kasey Warner, United States Attorney, R. Gregory McVey, Assistant United States Attorney, Huntington, West Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Donell Donte Padgett was convicted of conspiracy to distribute more than five grams of cocaine base, 21 U.S.C. § 846 (2000), two counts of distribution of cocaine base, 21 U.S.C. § 841(a)(1) (2000), and aiding and abetting the possession with intent to distribute cocaine base, 18 U.S.C. § 2 (2000), 21 U.S.C. § 841(a)(1). Padgett appeals his conviction and 108-month sentence. We affirm.

I

Law enforcement officials in Kanawha County, West Virginia, learned that an individual known as "Who-dini" was selling cocaine base (crack) in Dunbar and Charleston, West Virginia. The officials arranged to have two confidential informants make a series of controlled buys from Who-dini. Each time, the informant called Padgett's cell phone number to arrange to purchase crack. On January 7, 2003, John Corey Neal arrived to sell 2.2 grams of crack to the informant. On January 13, Padgett met the informant and sold him 1.3 grams of crack. On January 16, a second informant purchased .78 grams of crack from Padgett. On January 17, the second informant called Padgett's cell phone number to arrange a purchase of crack. Padgett arrived at a designated meeting place in a maroon Suburban and sold the informant 2.2 grams of crack. Police who had been monitoring a residence in Dunbar from which crack allegedly was being sold had often observed a maroon Suburban parked outside the residence.

When officers surveilling the residence learned that the January 17 controlled buy was about to take place, they began to videotape the front door of the home. Padgett and three others left the house and got into the maroon Suburban. Officers followed the vehicle to the place where the buy occurred, then followed it back to the residence. Padgett exited the Suburban.

On January 27, the first informant called Padgett's cell phone number and arranged to purchase crack. Corey Allison arrived in a Dodge Intrepid, which also often was parked outside the residence, and sold

crack to the informant. Police closed in, and Allison fled. He was soon captured, and officers found on Allison's person $200 of marked buy money that had been given to the informant.

The informants testified about the controlled buys at trial and identified the defendant, Padgett, as the man they knew as Who-dini. Allison testified that he, Padgett, and John Corey Neal lived at the residence, that the cell phone number the informants called belonged to Padgett, and that Padgett generally drove the Suburban. There was testimony that officers found mail addressed to Padgett at the residence. Finally, there was testimony that, during a search of the residence, officers found firearms, drug paraphernalia, and thirty grams of crack. Padgett arrived during the execution of the search warrant with $2400 and marijuana on his person.

## II

Padgett first contends that the evidence was insufficient to convict him because the testimony of the two informants was inherently unreliable. Witness credibility is within the sole province of the jury, and we will not evaluate the credibility of testimony. *United States v. Saunders*, 886 F.2d 56, 60 (4th Cir. 1989).

We conclude that, "taking the view most favorable to the Government," substantial evidence supports the verdict. *See Glasser v. United States*, 315 U.S. 60, 80 (1942); *United States v. Murphy*, 35 F.3d 143, 148 (4th Cir. 1994). First, Padgett was convicted of violating § 841(a)(1) on January 16 and 17. On each occasion, a confidential informant called Padgett's cell phone, and Padgett himself sold crack to the informant. Second, Padgett clearly aided and abetted the sale of crack on January 27: the informant called his cell phone number to arrange the transaction, and Allison testified that he conducted the transaction at Padgett's request. The evidence thus was sufficient to convict on Counts Four, Five, and Six. *See United States v. Burgos*, 94 F.3d 849, 873 (4th Cir. 1996) (en banc) (stating elements of offense). Finally, there was sufficient evidence to establish that Padgett, Allison, and Neal voluntarily entered into a conspiracy to distribute crack. *See id.* at 857 (stating elements of conspiracy).

III

Padgett next alleges that the district court should not have included as relevant conduct the thirty grams of crack found inside the residence. Under the sentencing guidelines, drug quantities not specified in the counts of conviction are considered relevant conduct when they are part of the same course of conduct or common scheme or plan. *U.S. Sentencing Guidelines Manual* § 1B1.3(a)(2) (2002). In calculating drug amounts, the court may consider any relevant information, "provided that the information has sufficient indicia of reliability to support its probable accuracy." *United States v. Uwaeme*, 975 F.2d 1016, 1021 (4th Cir. 1992) (quoting USSG § 6A.13(a), p.s.). Given Padgett's significant ties to the residence and his leaving from the residence, where crack was stored, to complete the January 17 drug transaction, the district court did not clearly err when it included the thirty grams as relevant conduct.

IV

Finally, Padgett contests the district court's finding that the firearms discovered at the residence were connected to drug trafficking and that their presence was reasonably foreseeable to Padgett. We review this finding for clear error. *See United States v. McAllister*, 272 F.3d 228, 234 (4th Cir. 2001).

The guidelines provide for a two-level increase in offense level for drug offenses "[i]f a dangerous weapon (including a firearm) was possessed." USSG § 2D1.1(b)(1). "[I]n the case of a jointly undertaken criminal activity . . . , all reasonably foreseeable acts . . . of others in furtherance of" that activity are included as relevant conduct. USSG § 1B1.3(a)(1)(B). The presence of guns to perpetrate illicit drug activity typically is reasonably foreseeable. "Absent evidence of exceptional circumstances, . . . it [is] fairly inferable that a codefendant's possession of a dangerous weapon is foreseeable to a defendant with reason to believe that their collaborative criminal venture includes an exchange of controlled substances for a large amount of cash." *United States v. Kimberlin*, 18 F.3d 1156, 1160 (4th Cir. 1994) (internal quotation and citation omitted).

Several firearms were found in the residence. Coconspirator Neal was in a bedroom with a loaded firearm under his pillow and another

under his bed. It was logical to infer that these and another gun were in the residence to protect the drugs that also were there. It was reasonably foreseeable that Padgett, who lived at the residence, would have known of the guns' presence, and it was not clear error for the district court to apply the firearm enhancement.

V

We accordingly affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*