**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 97-4397

FREDERICK EUGENE CRAIGHEAD,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 97-4398

NANNIE SUE CRAIGHEAD,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 97-4419

NANCY SUE WHEELING,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 97-4439

FRANCES ELAINE CRAIGHEAD,
Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Virginia, at Roanoke.
Samuel G. Wilson, Chief District Judge.
(CR-96-76)

Submitted: March 17, 1998

Decided: April 2, 1998

Before WIDENER and MOTZ, Circuit Judges, and BUTZNER,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Rhonda L. Overstreet, LUMSDEN & OVERSTREET, Roanoke, Vir-
ginia; Marc James Small, Roanoke, Virginia; Demetrius W. Fannick,
Wilkes-Barre, Pennsylvania; Wayne D. Inge, Roanoke, Virginia, for
Appellants. Robert P. Crouch, Jr., United States Attorney, Joseph W.
H. Mott, Assistant United States Attorney, Matthew Gomes, Third
Year Law Student, Roanoke, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In 1995 the Drug Enforcement Administration and local law
enforcement agents began investigating illegal drug transactions

2

occurring in the Chestnut Hill Trailer Park in Franklin County, Virginia. The investigation resulted in a fifty-one count superseding indictment charging Appellants Nannie Sue Craighead ("Nannie Sue"), Frederick Eugene Craighead ("Frederick"), Frances Elaine Craighead ("Frances"), Nancy Sue Wheeling, and sixteen other defendants with various conspiracy and associated drug distribution charges. Appellants each pled guilty to conspiring to possess with intent to distribute cocaine base in violation of 21 U.S.C. § 846 (1994). Appellants now challenge their sentences. For the reasons set forth below, we affirm.

I.

Nannie Sue, Frederick, and Frances Craighead contend that the district court erred in calculating the amount of cocaine attributable to them for sentencing purposes. The government has the burden of proving by a preponderance of the evidence sentencing factors, including the type and quantity of drugs for which the defendant should be held accountable. See United States v. Estrada, 42 F.3d 228, 231 (4th Cir. 1994). In proving these factors, the government may rely upon information found in a defendant's presentence report unless the defendant affirmatively shows that such information is inaccurate or unreliable. See United States v. Gilliam, 987 F.2d 1009, 1014 (4th Cir. 1993). Drug quantities attributable to persons convicted of conspiracy to distribute illegal drugs are determined by examining "the quantity of narcotics reasonably foreseeable to each conspirator within the scope of his agreement." United States v. Irvin, 2 F.3d 72, 78 (4th Cir. 1993); see also U.S. Sentencing Guidelines Manual § 1B1.3(a)(1)(B) (1996). We review the district court's findings on sentencing factors for clear error. United States v. McDonald, 61 F.3d 248, 255 (4th Cir. 1995).

Nannie Sue Craighead alleges the district court erred in holding her accountable for 492.2 grams of cocaine. Her presentence report indicated that codefendant Cassandra Craighead informed the government that Nannie Sue was selling at least a quarter-ounce of cocaine per week from the middle of 1995 until her arrest in September 1996. The district court credited this evidence, noting that four other witnesses made corroborative statements indicating that Nannie Sue was selling drugs on a routine basis. In addition, the district court recognized that

3

the presentence report did not factor into the 492.2 gram figure the $4600 in currency found in Nannie Sue's purse at the time of her arrest. See generally United States v. Uwaeme , 975 F.2d 1016, 1019 (4th Cir. 1992) (noting that district court can use large sums of money seized from defendant to determine amount of drugs at sentencing).

On appeal, Nannie Sue contends that the 492.2 gram figure is an estimate and that the government produced no direct evidence in support of this amount. However, in cases like this where the government is unable to establish the amount of drugs involved with specificity, a district court may approximate the quantity to be used for sentencing, and hearsay alone can provide sufficiently reliable evidence of quantity. See id. Accordingly, we find that the evidence before the district court was sufficient to hold Nannie Sue accountable for 492.2 grams of cocaine.

Frederick Craighead alleges that the district court erroneously held him accountable for 940.769 grams of cocaine base. First, he claims that the methodology used to derive this amount of cocaine was imprecise, and thus the government failed to meet its burden of proving he should be held accountable for this amount. Second, he alleges that the 940 gram amount is inflated because the district court failed to credit his testimony that he sold both powder and crack cocaine and therefore erroneously attributed drug weight in cocaine base rather than powder cocaine.

Frederick's own testimony is the sole evidence he introduced challenging the probation officer's recommendation to hold him accountable for 940 grams of cocaine. The district court, however, clearly credited the probation officer's testimony as to both the quantity and type of cocaine. We find that the presentence report and the probation officer's testimony provided ample evidence to support the district court's decision to attribute 940 grams of cocaine to Frederick for sentencing purposes.

The district court held Frances Craighead accountable for over 150 grams of cocaine based on the evidence presented at sentencing, particularly Frances' admissions as to the amounts of cocaine she dealt as explained by the probation officer. At sentencing, a probation officer familiar with the circumstances surrounding the preparation of

4

Frances' presentence report testified that 485.58 grams of cocaine were attributed to Frances based upon: (1) ten transactions as shown in the indictment from December 15 and March 21, 1996, totaling 75.44 grams; (2) information from coconspirator Tim Holland that in the summer of 1996 he sold Frances between a half ounce and an ounce of cocaine per week; (3) coconspirator Cassandra Craighead's statement that between March 1996 and the summer of 1996 she and Frances traveled together and purchased two ounces of cocaine on two separate occasions; (4) information that John Wilson purchased 14.1 grams of cocaine for Frances; (5) coconspirator Tim Muse's statement that he purchased five grams of cocaine from Frances; and (6) Frances' admission that she sold an additional 107.54 grams of crack. On cross examination, the probation officer stated that Frances' admissions alone provided sufficient evidence to attribute to her 152 grams of cocaine.

On appeal, Frances alleges the district court erred by double counting cocaine transactions from the indictment and other transactions for which she was held accountable. However, ignoring the 75.44 grams of cocaine from the indictment, Frances' admissions, and those transactions in which Frances sold cocaine, her purchases alone exceeded 150 grams. Adding the four ounces of cocaine Frances purchased with Cassandra Craighead (113.4 grams), the half ounce of cocaine she bought each week from Holland in the summer of 1996 (170.1 grams),[1] and the 14.1 grams John Wilson bought for her, this amounts to 297.6 grams of cocaine. In light of this evidence, we find that district court did not clearly err in determining the amount of drugs attributable to Frances.

II.

Frances Craighead next alleges that the district court failed to make

_____

[1] Frances offered no evidence demonstrating that Holland was incarcerated during the period of these contested drug transactions, and thus failed to meet her burden of establishing that the presentence report inaccurately attributed her with purchasing cocaine from Holland during the summer of 1996. See United States v. Terry, 916 F.2d 157, 162 (4th Cir. 1990).

5

factual findings in accordance with Fed. R. Crim. P. 32(c)(1). Rule 32(c)(1) states in pertinent part:

> At the sentencing hearing, the court must afford counsel for the defendant and for the Government an opportunity to comment on the probation officer's determinations and on other matters relating to the appropriate sentence, and must rule on any unresolved objections to the presentence report. The court may, in its discretion, permit the parties to introduce testimony or other evidence on the objections. For each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing. A written record of these findings and determinations must be appended to any copy of the presentence report made available to the Bureau of Prisons.

The purpose of this rule is to ensure that a record is made as to how the district court ruled on any alleged inaccuracy in the presentence report, thereby facilitating effective appellate review of the sentence imposed. United States v. Walker, 29 F.3d 908, 911 (4th Cir. 1994). "To comply with rule 32, a sentencing court need not articulate a finding as to disputed allegations with minute specificity." United States v. Perrera, 842 F.2d 73, 76 (4th Cir. 1988).

Frances argued at sentencing that alleged double counting and unreliable evidence erroneously attributed her with over 150 grams of cocaine. We find that the district court complied with Rule 32 by making an express finding that the government proved by a preponderance of the evidence that Frances was involved with over 150 grams of cocaine.

III.

Nannie Sue Craighead alleges that the district court erred in refusing to reduce her base offense level pursuant to U.S.S.G. § 3B1.2, which allows a reduction for a "minor" participant in the conspiracy. Because this determination is essentially a factual question, this Court reviews it for clear error. See 18 U.S.C.A.§ 3742(e) (West 1985 &

6

Supp. 1997); United States v. Gordon, 895 F.2d 932, 934 (4th Cir. 1990). Section 3B1.2 directs sentencing courts to reduce defendant's base offense by two levels if she was a "minor" participant in the criminal activity. The burden is on the defendant to prove by a preponderance of the evidence that she is entitled to a reduction based on her role in the offense. See id. at 935.

We find that Nannie Sue failed to meet this burden."A finding is `clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). Nannie Sue asserts that she was entitled to the reduction because she was not a major organizer or supplier in the conspiracy, dealt only small quantities, and was only involved in the conspiracy for a short period of time. The evidence at sentencing, however, was that Nannie Sue actively participated in possessing and distributing quarter-ounce quantities of cocaine on a routine basis. Evidence of her drug dealing activities was also corroborated by the $4600 in currency found in her trailer at the time of her arrest.

Although Nannie Sue testified at sentencing that she was unaware of much of the cocaine distribution that was occurring in the Chestnut Hill Trailer Park, she fails to substantiate her claim that she was less culpable than the other members of the conspiracy. While she may be correct in asserting that she was not a major organizer and supplier within the conspiracy, her activity was not necessarily minimal. See United States v. Calderon, 127 F.3d 1314, 1342 (11th Cir. 1997); United States v. Garcia, 920 F.2d 153, 155-56 (2d Cir. 1990) (departure denied where defendant was entrusted with and delivered large amount of cocaine). Further, this Court gives substantial deference to a district court's credibility judgments. See Uwaeme, 975 F.2d at 1018. Here, the district court heard evidence of Nannie Sue's drug activities and determined that she failed to show by a preponderance of the evidence that she was entitled to a downward adjustment of her sentence for minor participation. Based on this record, we are not left with the definite and firm conviction that the district court clearly erred in denying the downward adjustment.

7

IV.

Nannie Sue Craighead next claims that the district court erred in finding that her age and physical infirmities did not justify a downward departure under U.S.S.G. § 5H1.4.[2] A review of the record reveals that the district court understood its discretionary authority to depart under § 5H1.4 in circumstances of extraordinary physical impairment, but found that Nannie Sue's physical impairments did not rise to the level necessary to warrant such a departure. Accordingly, the issue is not reviewable on appeal. See United States v. Hall, 977 F.2d 861, 866 (4th Cir. 1992).

V.

Wheeling's sole argument on appeal is that the district court added two points to her criminal history category based on its erroneous interpretation of U.S.S.G. § 4A1.1(d). Section 4A1.1(d) instructs a district court to, "[a]dd 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. § 4A1.1(d). This Court reviews questions involving the legal interpretations of the Guidelines de novo. United States v. Wessells, 936 F.2d 165, 168 (4th Cir. 1991).

In 1992 Wheeling was convicted and sentenced for drug related offenses in Virginia state court. In 1994 her appeal of that conviction was denied, yet for reasons unclear from the record she remained free on appeal bond. On September 5, 1996, following her arrest in this case, a Virginia court ordered that Wheeling be remanded to custody for her 1992 state convictions. Wheeling now contends that because her state sentences were not executed when the instant offense

_____

**2** Section 5H1.4 states in relevant part: "Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. However, an extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly, than imprisonment."

8

occurred, she was not "under a criminal justice sentence" within the meaning of § 4A1.1(d).

If a defendant commits another crime after being sentenced but before serving that sentence, that defendant has committed the second crime while under a criminal justice sentence for § 4A1.1(d) purposes. See United States v. Damon, 127 F.3d 139, 147 (1st Cir. 1997) (holding defendant was under sentence when he committed the instant offense during one month stay of previously imposed sentence); United States v. Martinez, 931 F.2d 851, 852-53 (11th Cir. 1991) (sentenced but not surrendered for service). Even a defendant who has not been formally sentenced for a prior conviction can be "under sentence" within the meaning of § 4A1.1(d). See United States v. Norman, 129 F.3d 1393, 1401-02 (10th Cir. 1997) (finding so long as probation-like requirements are imposed during period of sentence deferment defendant is under sentence). Here, Wheeling had already been sentenced for her prior conviction at the time she committed the instant offense. Therefore, we find that the district court did not err in finding that she was under sentence and properly increased her criminal history category by two points under § 4A1.1(d).

Accordingly, we affirm Appellants' sentences. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

9